UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMANTHA BATLER, ) | |
| JON MEEKS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:21-cv-00028-SEB-MJD |
| ) | |
| SCOTT MELLINGER, ) | |
| MADISON COUNTY SHERIFF'S ) | |
| DEPARTMENT, ) | |
| JUSTIN WEBER, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION TO REMAND**

Plaintiffs Samantha Batler and Jon Meeks (together, "Plaintiffs") initiated this civil rights lawsuit against Defendants Scott Mellinger, the Madison County Sheriff's Department, and Justin Weber (collectively, "Defendants") in the Madison Circuit Court (Indiana) on August 28, 2020. Defendants removed this matter to our court on January 5, 2021, asserting that removal was timely because service had not yet occurred. Now before the Court is Plaintiffs' Motion to Remand [Dkt. 9]. For the reasons set forth herein, this motion is **GRANTED.**

**<u>Background</u>**

Plaintiffs initiated this lawsuit in Madison County (the "State Court") on August 28, 2020, charging Defendants with violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. [Dkt. 9-1.] On September 10, 2020, Plaintiffs' counsel attested and certified under penalty of perjury that the summonses and

1

copies of the complaint were served via certified mail, return receipt requested, to each of the three Defendants at the Madison County Sheriff's Department on September 2, 2020. [Dkt. 9-4.] Attached to this affidavit were the certified mail return receipt green cards. *Id.* All three green cards were dated "09-02-20." *Id.* Written on the signature line of each card was "Covid-19," and the letters "TM 1613" on the received-by line. *Id.* Tracking information furnished by the United States Postal Service ("USPS") indicated that the documents were "Delivered, Left with an individual." *Id.*

On November 5, 2020, Plaintiffs' counsel transmitted courtesy copies of the summonses and complaints to Sue Cunningham at Alternative Service Concepts ("ASC"), a third-party claims administrator for Madison County's insurer. [Dkt. 10-4.] The courtesy copies were received by Ms. Cunningham on November 18, 2020, and, on November 20, 2020, ASC referred the lawsuit to Attorney Matthew Hinkle. [Dkt. 1-3.] Attorney Hinkle filed an appearance on behalf of Defendants on November 23, 2020, and a "Motion for Initial Enlargement of Time to Respond to Plaintiffs' Complaint for Damages" on behalf of Defendants that same day. *Id.* The motion asserts that "[d]efendants were served on or about September 2, 2020." *Id.* This assertion purportedly was based exclusively on the representations made in Plaintiffs' Affidavit of Service. [Dkt. 10.] However, Attorney Hinkle's clients subsequently claimed that they had never received the summonses nor the copies of the complaint. *Id.*

On January 5, 2020, Defendants filed their Notice of Removal [Dkt. 1.], in which they state:

2

> On or about September 10, 2020, an affidavit of service by certified mail was filed along with an exhibit A – USPS tracking form. The tracking for the service states, "Covid-19" in the signature line of each 'green card.' Based on the affidavit of Service, there was a belief that service had been perfect when, in fact, it had not been.

*Id.*

Indeed, each Defendant has submitted an affidavit stating that he: (1) did not receive service of the summonses or complaint copies on or about September 2, 2020; (2) did not authorize an agent to sign certified mail for them; (3) do not know what "TM 1613" signifies; (4) did not authorize anyone with those initials to accept service for them; (5) have never authorized anyone to sign certified mail at the Sheriff's Department by marking "Covid-19" on the green card. [Dkts. 10-5, 10-6.] Simultaneously with the filing of their Notice of Removal, Defendants filed their waivers of service. [Dkts. 4, 5.]

Plaintiffs have now moved to remand this matter, contending that service was perfected on September 2, 2020, rendering Defendants' removal petition untimely. [Dkt. 9.]

## Analysis

### I. Standard of Review

Title 28 U.S.C. § 1446(b)(1) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

The Supreme Court has interpreted Section 1441(b)(1) to mean that the defendant's time to remove is not triggered until he has received formal service of the summons and complaint, either "by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros. v. Michetti Pipe Stringing*, Inc., 526 U.S. 344, 347–48 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."); *id.* ("[T]he 'service or otherwise' language . . . was not intended to bypass service as a starter for § 1446(b)'s clock"); *Cose v. Gorske*, 761 F. App'x 603, 606 (7th Cir. 2019) (noting that *Murphy* "reject[ed an] interpretation of 28 U.S.C. § 1446 that would 'render removal the sole instance in which one's procedural rights slip away before service of a summons'").

To determine when Defendants' 30-day deadline to remove was triggered, we must first determine if and when they were formally served. Service of process upon individuals is governed under Federal Rule of Civil Procedure 4(e), which provides that "[u]nless federal law provides otherwise," an individual may be served either by "following state law for serving a summons," or by executing a federally prescribed service of process. Both Plaintiffs and Defendants agree that Indiana Trial Rule 4.1(A) governs analysis of this issue.[1] Accordingly, in determining whether process has been

---

[1] It is apparent from the Complaint that Defendant Scott Mellinger is being sued solely in his official capacity as the Madison County Sheriff, which functions as an action of the Madison

4

served under state law, we are "strictly bound . . . by the letter of state law and are without authority to fill whatever interstitial gaps a given case may illuminate." *Swaim v. Moltan Co.*, 73 F.3d 711, 720 (7th Cir. 1996).

## II.     Discussion

Here, Plaintiffs maintain they fulfilled their duties under Indiana law to effectuate service of process on Defendants. The Indiana Rules of Trial Procedure state that service on individuals may be effectuated by "sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgement of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter . . ." Ind. T.R. 4.1(A)(1). Proof of service may take the form of an affidavit "signed by the person making [service]," and must include a statement attesting "that service was made upon the person as required by law and the time, place, and manner thereof . . ." Ind T.R.

---

County Sheriff's Department. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978). ("[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . ."); *see also Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) (explaining that municipal officers may be sued in their official capacities although the suit is treated as one against the municipal entity); *Jones v. Heilman*, No. 3:08-cv-157-RLY-WGH, 2010 WL 11652024, at *10 (S.D. Ind. Sept. 29, 2010) (concluding that sheriff's department was superfluous and should be dismissed where the complaint named as a defendant the sheriff in his official capacity). Service of process upon an individual acting in his official capacity is also governed by Federal Rule of Civil Procedure 4(e). *See, e.g.*, *Dent v. Dennison*, No. 17-cv-1356-MJR, 2017 WL 6507047 at *8 (S.D. Ill. Dec. 20, 2017) (where defendants sued in their official capacity were served process pursuant to Fed. R. Civ. P. 4(e)). We also note that Defendants have not contended that where, as here, the Complaint includes as defendants both the sheriff in his official capacity and the sheriff's department, that proper service upon the sheriff as an individual does not suffice to properly serve the department given that the two defendants are essentially one-in-the-same. For these reasons, we conduct our analysis of all parties' service of process under Indiana Trial Rule 4.1(A)(1).

5

4.15(A). The Indiana Trial Rules also specify that "[n]o summons or the service thereof shall be adjudged insufficient when either is reasonably calculated to inform the person to be served . . ." Ind. T.R 4.15(F).

Under normal (non-pandemic) circumstances, there would be no question that Plaintiffs' Affidavit of Service, which includes return receipts from the USPS showing that the summonses and copies of the complaint were delivered to each defendant, was sufficient to satisfy the requirements of Indiana Trial Rule 4.1(A)(1). [Dkt. 1-2.] *See Jordache White and American Transport, LLC*, 61 N.E.3d 301, 307 (Ind. Ct. App. 2016) (quoting *Buck v. P.J.T.*, 394 N.E.2d 935, 937 (Ind. Ct. App. 1979)) ("[C]ertified mail with a return receipt satisfies the method requirement of due process. . . . [A]ctual delivery to the party is not jurisdictionally necessary.").

The COVID-19 pandemic, however, has injected some confusion into an otherwise straightforward analysis. Specifically, the pandemic necessitated that USPS "temporarily modify[] customer signature capture procedures." *USPS Coronavirus Updates for Residential Customers*, USPS.COM (July 3, 2021), https://faq.usps.com/s/article/USPS-Coronavirus-Updates-for-Residential-Customers#delivery (hereinafter, "*USPS Coronavirus Updates for Residential Customers*"). Prior to this modification, a USPS return receipt "provide[d] the sender with . . . the recipient's signature along with information about the . . . date and time of delivery." *Return Receipt – The Basics*, USPS.COM (May 27, 2021), https://faq.usps.com/s/article/Return-Receipt-The-Basics#return_receipt_use.

6

The relevant alterations to USPS procedure included that "while maintaining a safe, appropriate distance, employees will request the customer's first initial and last name," that "employees will politely ask the customer to step back a safe distance . . . so that items may be left in the mail receptacle or appropriate location by the customer door," and that "[i]f there is no response, employees will follow the normal Notice Left process." *USPS Coronavirus Updates for Residential Customers*, *supra*. Obviously and reasonably, the USPS had adopted a contactless approach for delivering certified mail,[2] relieving USPS employees of the requirement to obtain signatures from the certified mail recipients.[3]

Defendants have characterized Plaintiffs' Affidavit of Service as a "false affidavit," on the basis that the certified mail green cards were labeled with the name "TM 1613" and signed "Covid-19." [Dkt. 10.] They additionally have provided sworn attestations establishing that no one was authorized to sign certified mail on behalf of Defendants and that they did not receive service of process. [Dkts. 10-5, 10-6.] For the reasons explained below, we are unpersuaded by these arguments.

---

[2] The parties do not dispute that the USPS adopted this protocol prior to September 2, 2020, and have both made filings conceding as much. [Dkts. 10, 11.]

[3] The modifications to USPS procedures have sparked something of a wave of litigation on the issue of whether certified mail constitutes sufficient service of process. The outcomes of such cases have generally hinged on the relevant state trial procedural rules. *See First Acceptance Ins. Co., Inc. v. Rosser*, No. 2:20-cv-554-TFM-C, 2021 WL 2013056 at *3 (S.D. Ala. May 19, 2021); *Cunningham v. Matrix Fin. Serv., LLC*, No. 8:20-mc-00065-CJC-JDE, 2021 WL 1156851 at *4-5 (C.D. Cal. Feb. 4, 2021); *Finnell v. Eppens*, No. 1:20-cv-337, 2021 WL 75414 at *4 (S.D. Ohio Jan. 8, 2021); *Macias v. Grange Ins. Co.*, No. 2:20-cv-00170, 2020 WL 4913215 at *2 (W.D. La. Aug. 20, 2020).

Although the USPS adopted a contactless approach to delivering certified mail, Defendants have failed to establish that the USPS abandoned the certification process altogether. On the contrary, the fact that the USPS continued to request the first initial and last name from the recipients of certified mail strongly indicates that it continued the process of certification, and temporarily suspended only the requirement to obtain a customer signature. Defendants also have provided no authorities supporting their contention that Plaintiffs' Affidavit of Service is insufficient proof of service under Indiana Trial Rule 4.15(A), nor have Defendants challenged the veracity of Plaintiffs' averments representing that they had completed all the steps to effectuate service on Defendants via certified mail.

Defendants contend that the label "TM 1613" indicates that a person other than each Defendant was served process, relying on *LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993), for the holding that a person accepting service on behalf of another must have authorization to do so in order to ensure delivery. [Dkt. 10.] We view Defendants' reliance on *LaPalme* as misplaced. In *LaPalme*, the service of process issue involved a process server personally leaving a copy of the summons with the legal manager for an individual's employer. *LaPalme*, 621 N.E.2d at 1104. The Indiana Supreme Court described such actions as a "total failure to serve process," specifically contrasting it with certified mail procedures. *Id.* at 1105-06. As the Court made clear, "A copy of the summons and complaint, sent by registered or certified mail to the party, is adequate service." *Goodman v. Clark*, on which Defendants also rely here, similarly contrasts copy service at one's place of employment with the use of certified mail. No. 2:09-cv-355, 2010 WL 2838396 at *8

8

(N.D. Ind. July 12, 2010) (holding "Indiana law allows for . . . service of an individual to be made upon that individual . . . by sending a copy of the summons and complaint by . . . certified mail . . . to the individual's residence, place of business, or place of employment.").

Indiana courts have made clear that "nothing in the trial rules requir[es] that the individual to whom service of process is mailed be the one who signs the return receipts in order for service to be effective. Rather, the rule requires only that service be *sent* by certified mail to the proper person . . ." *Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind. Ct. App. 1994) (emphasis in original). There is no dispute that is what occurred here.

In addition, our court has held that in the case of certified mail, "implicit or apparent authority to receive certified mail" may in fact be sufficient to satisfy the requirements of Indiana Trial Rule 4.1(A)(1). *Robinson v. Turner*, 886 F. Supp. 1451, 1457 (S.D. Ind. 1995). Certified mail delivered to such authority "can be adequate service of process under the Indiana Trial Rules even if the person who signs the receipt is not the individual to whom the mailing was certified." *Id.* at 1456. That the place of Defendants' employment was the Madison County Sheriff's Department/Jail, further places the facts of this case within the four corners of *Robinson*, which involved certified mail being delivered to a prison that was subsequently accepted by an unauthorized person who nonetheless had apparent authority to do so. *Id.* at 1453.

Even allowing for the possibility that Plaintiffs' attempts to serve process were technically deficient in some regard, Indiana Trial Rule 4.15(F) mandates that "no summons or service of process shall be set aside if either is reasonably calculated to

9

inform the defendant of the impending action against him." *Reed Sign Service, Inc. v. Reid*, 755 N.E.2d 690, 696 (Ind. Ct. App. 2001). The Seventh Circuit has observed that Indiana service of process compliance "depends on the form of service, not whether the affected party was actually notified." *Swaim*, 73 F.3d at 720. *See also Buck v. P.J.T.*, 394 N.E.2d 935, 936-37 (Ind. Ct. App. 1979) (holding that a form of service that is "reasonably calculated to give actual notice" yet "fails to do so in a specific case" is nevertheless sufficient). Indiana courts have also emphasized that the language of Trial Rule 4.1 provides "that service *may be made* upon an individual," while "other rules provide that service *shall be made* upon certain parties," concluding that the distinction "is evidence that personal jurisdiction is acquired by any method of service of summons which comports with due process." *Washington v. Allison*, 593 N.E.2d 1273, 1275 (Ind. Ct. App. 1992).

  Given the foregoing provisions in the Indiana Trial Rules, we conclude that Plaintiffs' service of process was "reasonably calculated" to inform Defendants within the meaning of Trial Rule 4.15(F). Indeed, it is unclear to us what more Plaintiffs could have reasonably done to ensure service of process. Further weighing against Defendants' position is the fact that, regardless of these circumstances, their counsel had actual notice of the proceedings as of November 23, 2020. [Dkt. 1-3.] While "actual service alone will not cure defective service, it may be considered in determining whether the notice was reasonably calculated to inform an organization of the action." *Northwestern Nat. Ins. Co. v. Mapps*, 717 N.E.2d 947, 955 (Ind. Ct. App. 1999). *See also Reed Sign Service, Inc.*, 755 N.E.2d at 696 n.5 (holding that actual notice is "strong evidence" that service of

process was reasonably calculated to inform). Thus, even if service of process was in some fashion technically deficient, Plaintiffs did not totally fail to serve process in such a way as to render Trial Rule 4.15(F) inapplicable. *Reed Sign Service, Inc.*, 755 N.E.2d at 696. (explaining that "Trial Rule 4.15(F) will prevent service of process which is technically deficient from defeating the personal jurisdiction of a court.")

For the reasons explicated above, we find that Plaintiffs satisfied their service of process obligations under Federal Rule of Civil Procedure 4 and Indiana Trial Rule 4 on September 2, 2020, thereby triggering the thirty-day removal timely set forth in 28 U.S.C. § 1446(b). Defendants' removal was thus untimely, and this matter shall be remanded to the State Court.[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand [Dkt. 9] is **GRANTED.**

IT IS SO ORDERED.

Date:   7/16/2021

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[4] While both Plaintiffs and Defendants address the issue of awarding attorney fees and costs upon remand, this Court finds the legal issues arising from Covid-19 procedures sufficiently novel to conclude that the award of fees and costs is not warranted in this matter. *See Lott v. Pfizer*, 492 F.3d 789, 793 (7th Cir. 2007) (holding that plaintiffs are entitled to attorneys' fees "only if the defendant lacked an objectively reasonable basis for seeking removal") (internal quotes omitted).

Distribution:

Nicholas Calvin Deets
HOVDE DASSOW & DEETS LLC
ndeets@hovdelaw.com

James Alex Emerson
COOTS HENKE & WHEELER, P.C.
aemerson@chwlaw.com

Alex Emerson
COOTS, HENKE & WHEELER, P.C.
255 E Carmel Drive
Carmel, IN 46032

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com